**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| (1) J.H., a minor, by and through his parents and next friends, JOE HOWELL and ANGELINA HOWELL; and<br><br>(2) J.M., a minor, by and through his parent and next friend, DESTINEE MILLER;<br><br><br>     *Plaintiffs*,<br><br>v.<br><br>(1) INDEPENDENT SCHOOL DISTRICT NO. 19 OF CARTER COUNTY, OKLAHOMA a/k/a ARDMORE CITY SCHOOLS a/k/a ARDMORE PUBLIC SCHOOLS; and<br><br>(2) BETTY JO PLANTA-LEWIS, individually;<br><br>     *Defendants*. | § § § § § § § § § § § § § § § § § § § § § § § § | Case No.  CIV-25-447-JAR<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

Plaintiffs J.H., a minor, by and through his parents and next friends, Joe Howell and Angelina Howell, and J.M., a minor, by and through his parent and next friend, Destinee Miller, (collectively, "Plaintiffs") bring this action against Defendants Independent School District No. 19 of Carter County, Oklahoma, also known as Ardmore City Schools or Ardmore Public Schools (the "District" or "ACS"), and Betty Jo Planta-Lewis ("Planta-Lewis"), and allege as follows:

### I.  PRELIMINARY STATEMENT

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 to redress egregious violations of Plaintiffs' constitutional rights arising from prolonged physical and emotional abuse inflicted upon developmentally disabled and autistic children within a public-school setting.

2.      Plaintiffs were subjected to repeated acts of abuse by Defendant Betty Jo Planta-Lewis, a special education teacher employed by Ardmore City Schools, while under the care, custody, and control of the District. The abuse occurred in the context of special education services, where Plaintiffs were uniquely vulnerable and entirely dependent on school personnel for their safety and well-being.

3.      The injuries suffered by Plaintiffs were not isolated or unforeseeable. Rather, they were the direct and proximate result of the District's longstanding, systemic, and deliberate indifference to known and obvious risks of harm to students with disabilities. For years, ACS tolerated a culture in which abuse and neglect were ignored, minimized, concealed, or affirmatively permitted to continue.

4.      From approximately August 2020 through April 2024, during Planta-Lewis's employment with Ardmore City Schools, she engaged in a pattern and practice of psychologically and physically abusing students in her classroom, including Plaintiffs J.H. and J.M. This abuse was witnessed by paraprofessionals, teachers, and administrators employed by the District.

5.      Despite actual knowledge of abusive conduct and clear warning signs, District personnel failed to take reasonable steps to intervene, failed to report suspected child abuse as required by Oklahoma law, and failed to implement corrective or protective measures. In April 2024, video surveillance footage captured instances of Planta-Lewis abusing Plaintiffs J.H. and J.M., confirming conduct that had long been known or suspected by school officials.

6.      The District's failures in hiring, supervision, training, discipline, and reporting were so persistent and widespread as to constitute official policy or custom. These failures created and perpetuated an environment in which constitutional violations were not only foreseeable but inevitable.

2

7.    As a direct and proximate result of Defendants' actions and omissions, Plaintiffs suffered severe physical pain, emotional distress, psychological trauma, regression in educational and developmental progress, and the deprivation of their clearly established constitutional right to bodily integrity and personal security.

8.    Plaintiffs seek redress under 42 U.S.C. § 1983 for these constitutional violations against the School District and assert supplemental state-law claims for negligence and gross negligence against the District, and for assault, battery, and intentional infliction of emotional distress against Defendant Planta-Lewis.

9.    Plaintiffs demand a trial by jury on all issues so triable.

## II.  THE PARTIES

### A.  PLAINTIFF J.H., A MINOR

10.    Plaintiff J.H. is a minor who, at all relevant times, was a student at Will Rogers Elementary School and a resident of Carter County, Oklahoma. J.H. has severe developmental disabilities and qualifies for special education services under federal and state law.

11.    J.H. is also nonverbal.

12.    During the 2023-2024 school year, J.H. was a student under the instruction, care, custody, and supervision of Defendant Betty Jo Planta-Lewis, a teacher employed by Defendant Ardmore City Schools.

13.    J.H. brings this action by and through his parents and next friends, Joe Howell and Angelina Howell, who are also residents of Carter County, Oklahoma.

### B.  PLAINTIFF J.M, A MINOR

14.    Plaintiff J.M. is a minor who, at all relevant times, was a student at Will Rogers Elementary School and a resident of Carter County, Oklahoma. J.H. has cerebral palsy, severe

3

autism, and attention deficit hyperactivity disorder (ADHD) and qualifies for special education services under federal and state law.

15.     J.M. is also nonverbal.

16.     During the 2023-2024 school year, J.M. was a student under the instruction, care, custody, and supervision of Defendant Betty Jo Planta-Lewis, a teacher employed by Defendant Ardmore City Schools.

17.     J.M. brings this action by and through his parent and next friend, Destinee Miller, who is a resident of Carter County, Oklahoma.

**C. DEFENDANT INDEPENDENT SCHOOL DISTRICT NO. 19 OF CARTER COUNTY**

18.     Defendant Independent School District No. 19 of Carter County, Oklahoma, also known as Ardmore City Schools or Ardmore Public Schools is a public educational institution organized and existing under the laws of the State of Oklahoma, with its principal place of business in Carter County, Oklahoma.

19.     Ardmore City Schools is a political subdivision of the State of Oklahoma and operates as a public school district receiving county, state, and federal funding. The District is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, acted under color of state law.

20.     Through its Board of Education and other officials with final policymaking authority, the District establishes, maintains, and enforces official policies, customs, and practices governing the hiring, training, supervision, discipline, and retention of its employees, including special education teachers and staff.

21.     Will Rogers Elementary School, located at 1441 N Washington, Ardmore, Oklahoma 73401, is one of the elementary schools operated by Ardmore City Schools.

22.     Ardmore City Schools may be served with process through its Clerk of the Board of Education, Lori Capshaw, at 611 Veterans Blvd., Ardmore, Oklahoma 73401.

D.  DEFENDANT BETTY JO PLANTA-LEWIS

23.     Defendant Betty Jo Planta-Lewis is an individual who, at all relevant times, was employed by the Ardmore City Schools as a special education teacher assigned to Will Rogers Elementary School and acted under color of state law.

24.     On June 3, 2024, Planta-Lewis was arrested and charged with two felony counts of child abuse arising from her conduct toward Plaintiffs J.H. and J.M. in her classroom.[1]

25.     On information and belief, Defendant Planta-Lewis is a resident of Love County, Oklahoma, and can be served at 908 Silo Avenue, Marietta, Oklahoma 73448, or wherever she may be found.

### III.    JURISDICTION AND VENUE

26.     This Court has subject matter jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, which gives district court's jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

27.     This Court also has subject matter jurisdiction under 28 U.S.C. § 1343, which gives district courts original jurisdiction over any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and any civil action to recover damages or to secure equitable

---

[1] *See* June 3, 2024, Information, *State of Oklahoma v. Betty Jo Planta-Lewis,* Case No. CF-2024-196, (Carter Cnty. Dist. Ct.).
https://www.oscn.net/dockets/GetCaseInformation.aspx?db=carter&number=CF-2024-196

relief under any Act of Congress providing for the protection of civil rights, including 42 U.S.C. § 1983.

28.    This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367 because those claims form part of the same case or controversy as Plaintiffs' federal claims.

29.    This Court also has subject matter jurisdiction over pendent state law claims regarding the violation of the Oklahoma Constitution, state statutes, and common law torts.

30.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part the events and omissions giving rise to the claims occurred in Carter County, Oklahoma, which lies within the Eastern District of Oklahoma, and because the District is located and transacts business in this District.

31.    At all relevant times, Defendant Ardmore City Schools acted under color of the statutes, ordinances, regulations, customs, and usages of the State of Oklahoma.

32.    At all relevant times, Defendant Planta-Lewis acted under color of state law as an employee of the District and within the scope of her assigned duties and authority.

33.    Plaintiffs have satisfied all conditions precedent to the extent such conditions apply, or such conditions are excused.

34.    Plaintiffs timely served the School District with written notice of their tort claims pursuant to the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 O.S. § 156, on March 24, 2025. The School District did not affirmatively approve the claims within 90 days, and the claims were therefore deemed denied by operation of law. This action is timely filed within the 180-day period following denial.

## IV.  FACTUAL ALLEGATIONS

### A. THE HISTORIC FAILURES OF ARDMORE CITY SCHOOLS

35.    Ardmore City Schools had a duty to provide a safe and secure learning environment for its students. It failed in that duty.

36.    Ardmore City Schools owed its students, including Plaintiffs, protection from reasonably foreseeable harm while they were under the District's care, custody, and control.

37.    The District repeatedly failed to protect its most vulnerable students, including students with disabilities, from known and obvious risks of cruelty, mental abuse, and physical abuse.

38.    Upon information and belief, teachers and staff were rarely disciplined for serious misconduct, including mistreatment of children, due in part to administrators' concerns about potential employment litigation and staffing shortages. This practice and the resulting lack of accountability were widely known among teachers and paraprofessionals throughout ACS.

- **PRIOR NOTICE THROUGH COMPLAINTS, PROCEEDINGS, AND SIMILAR INCIDENTS:** *Forrester, et al., v. Ardmore City Schools*

39.    In 2016, a minor, C.F., and his parents ("the *Forrester* Plaintiffs") brought a federal lawsuit against Ardmore City Schools for the abuse and mistreatment of C.F., "a severely disabled ten-year old boy" "diagnosed with Autism and Severe Receptive Expressive Language Disorder" whose "disabilities" included the "inability to communicate verbally" and "an estimated I.Q. of 44.[2]

---

[2] Second Amended Complaint, Doc. No. 46, at ¶ 2, *Forrester, et al., v. Independent School District No. 19 of Carter County, State of Oklahoma, d/b/a Ardmore City Schools,* Case No. 6:16-cv-00131-KEW, (E.D. Okla.).

7

40.    The *Forrester* Plaintiffs alleged that after C.F.'s parents became concerned with how C.F. was being treated by ACS teachers and staff, they reviewed his school file and discovered that he had been "secluded" by school personnel locking him in a closet.[3]

41.    C.F.'s parents then recorded C.F.'s school days through his "Talker," a communication device designed to assist those with developmental disabilities. The *Forrester* Plaintiffs alleged that through the recordings, they discovered that ACS staff called C.F. a "bastard," stated they did not want to work with him, and mocked his disability.[4]

42.    The *Forrester* Plaintiffs alleged that in October 2015, C.F.'s parents discovered that the District had hired a special education teacher, Amanda Bristow, with the knowledge that Ms. Bristow had pleaded no contest to multiple counts of felony child abuse in August 2015. When questioned about its decision to hire Ms. Bristow, the District sent out a letter stating that it had conducted a proper search with due diligence and that school safety was a paramount concern.[5]

43.    The *Forrester* Plaintiffs alleged that, on the same day, a paraprofessional witnessed Ms. Bristow restrain a child in a way that made her feel "uncomfortable," as she wrote in her notes.[6]

44.    The Oklahoma State Department of Education ("OSDE") then suspended Ms. Bristow's teaching license on an emergency basis.[7]

45.    The *Forrester* Plaintiffs alleged that Superintendent Sonny Bates and Assistant Superintendent Missy Storm then made a false report to the Ardmore Police Department, stating

---

[3] *Id.* at ¶¶ 13-15.

[4] *Id.* at ¶¶ 17- 23.

[5] *Id.* at ¶¶ 28-29.

[6] *Id.* at ¶ 30.

[7] *Id.* at ¶ 31.

that Ardmore City Schools did not learn about the *Forrester* Plaintiffs obtaining recordings through C.F.'s Talker until November 2015, when in actuality, ACS personnel signed statements acknowledging that they knew of the recordings on September 29, 2015.[8]

46.     After both administrative hearings before the OSDE **and** federal court proceedings in the Eastern District of Oklahoma, Ardmore City Schools reached a settlement with the Forrester family.[9]

47.     The *Forrester* matter provided the District with actual and/or constructive notice that students with significant disabilities in ACS were at risk of mistreatment and abuse; that special education classrooms required heightened oversight; that staff could engage in degrading or harmful treatment; and that robust reporting, supervision, and corrective action were necessary to prevent constitutional violations.

48.     Despite the public scrutiny and national attention[10] generated by the *Forrester* litigation, Ardmore City Schools continued to disregard these known risks and failed to implement

---

[8] *Id.* at ¶¶ 32-34.

[9] February 16, 2018, Order Approving Settlement Agreement with a Minor, [Doc. No. 79], *Forrester, et al., v. Independent School District No. 19 of Carter County, State of Oklahoma, d/b/a Ardmore City Schools,* Case No. 6:16-cv-00131-KEW, (E.D. Okla.).

[10] "Children with disabilities, … are vulnerable – not to predators, but to authority figures who feel it's their duty to force compliance. Because these children often do not communicate through typical speech, they often lack the ability to call for help."…"No wonder some parents have chosen to make secret recordings. **In Ardmore, Oklahoma, a school district** is trying to get a court to throw out recordings that, according to a complaint, prove illegal and routine seclusion, while capturing teachers and staff making fun of a child's disability." [*emphasis added*].
*See* David Perry, *Teacher's awful mistreatment of special needs child,* CNN, **(**May 4, 2016). https://www.cnn.com/2016/05/04/opinions/special-needs-child-mistreated-in-classroom-opinion-perry

meaningful safeguards, reflecting deliberate indifference to the rights and safety of students with disabilities.  That is shocking.

- **SIMILAR ABUSE ALLEGATIONS INVOLVING ANOTHER TEACHER – SUSAN MARIE HARTMAN**

49.     Susan Marie Hartman was a teacher at Charles Evans Elementary, another elementary school in Ardmore City Schools.

50.     Over the years, Charles Evans staff and principals witnessed Hartman mistreat special education students. Every day, they heard her scream in the faces of special education students in the hallway.

51.     On April 10, 2024, Hartman was charged with one count of felony child abuse for "willfully or maliciously injuring or torturing I.M. a child … who was 7 years old at the time and has developmental disabilities, by grabbing his arm, slinging him around, dragging him by the arm, screaming in his face and inflicting extreme mental cruelty while working in her official capacity as an Ardmore City Schools Teacher."[11]

52.     I.M sent ACS a Notice of Tort Claim on October 18, 2024, stating that the abuse at the center of the charge against Hartman occurred on March 27, 2024, but that the incident was not reported to law enforcement until two weeks after it happened, allowing Hartman to continue having access to I.M. and other students.

53.     The Notice of Tort Claim also stated that I.M.'s teacher had witnessed several acts of abuse by Hartman against I.M. but had failed to intervene.

---

[11] *See* April 22, 2024, Information, *State of Oklahoma v. Susan Marie Hartman,* Case No. CF-2024-146, (Carter Cnty. Dist. Ct.).
https://www.oscn.net/dockets/GetCaseInformation.aspx?db=carter&number=CF-2024-146

54.     On July 15, 2025, I.M. filed a lawsuit against Hartman, the District, Superintendent Andy Davis, and teacher Hannah Kennedy, alleging negligent and intentional infliction of emotional distress, violations of Title IX, assault and battery, gross negligence, and equal protection violations.[12]

55.     The Carter County District Attorney's office has since dismissed the felony child abuse charge against Defendant Hartman and charged her with misdemeanor assault and battery.

## B.   THE MODUS OPERANDI OF BETTY PLANTA-LEWIS

56.     Betty Planta-Lewis was a special education teacher at Ardmore City Schools and a state actor acting under color of state law.

57.     Planta-Lewis served as the lead teacher for students categorized as "severely disabled," many of whom were nonverbal and unable to report abuse or advocate for themselves.

58.     Upon information and belief, Planta-Lewis engaged in a pattern and practice of mentally and physically abusing students in her classroom and in the hallways at school.

59.     Plaintiffs J.H. and J.M. were among Planta-Lewis's victims. As detailed below, the District was aware of prior victims of Planta-Lewis's abusive conduct before the events giving rise to Plaintiffs' claims.  That was deliberate indifference.

- PLANTA-LEWIS'S ABUSE OF C.S. DURING THE 2020-2021 SCHOOL YEAR

60.     C.S. was in Betty Planta-Lewis's special education class during the 2020-2021 school year, when C.S. was in kindergarten.

61.     C.S. has low-functioning autism, an IQ around 60, and limited verbal language skills.

---

[12] *Moore v. Board of Education for Ardmore City Schools*, Case No. 25-CV-360-JAR, (E.D. Okla.); *see also Moore v. Board of Education for Ardmore City Schools*, Case No. CJ-2025-215, (Carter Cnty. Dist. Ct.).

62.     C.S.'s mother, identified herein as T.T., is a single parent of four children, three of whom have autism.

63.     Prior to the 2020–2021 school year, C.S.'s self-injurious behaviors had significantly improved during preschool, including a reduced need for protective headgear.

64.     Shortly after the 2020–2021 school year began, T.T. and C.S.'s siblings observed a deterioration in C.S.'s behavior, including renewed agitation and increased self-harm.

65.     Upon information and belief, on September 3, 2020, Planta-Lewis made a report to Child Protective Services ("CPS") alleging that C.S. had a bump on her head and requesting investigation of T.T. for physical and sexual abuse.

66.     T.T. explained that C.S. had resumed head-banging behaviors and that the injury at issue was consistent with C.S. striking herself with an object.

67.     CPS investigated and ruled out allegations that T.T. physically or sexually abused C.S.

68.     C.S.'s behavioral therapist communicated with school personnel to help them understand C.S.'s self-harming behaviors and needs.

69.      C.S. began coming home with new injuries, including scratches and bruises, that did not occur at home and were not reported or explained by school staff.

70.     C.S. experienced disrupted sleep and appetite, consistent with increased stress and trauma.

71.     Upon information and belief, on September 30, 2020, Planta-Lewis made a second CPS report alleging bruising on C.S.'s hips.

72.     T.T. explained that C.S. bruised her hips while attempting to access a bathroom while T.T. was showering. CPS did not find it necessary to formally investigate the report.

73.     During a parent-teacher conference in October 2020, Planta-Lewis admitted to T.T. that she allowed C.S. to bang her head against a desk for several minutes during a "timeout" without intervening to prevent injury.

74.      Planta-Lewis repeatedly questioned and scrutinized T.T.'s parenting choices and, without explanation, changed C.S. into unfamiliar clothing at school and discarded C.S.'s preferred clothing despite T.T. routinely providing a change of clothes.

75.     Upon information and belief, on October 27, 2020, Planta-Lewis made another CPS report regarding a scratch on C.S.'s back.

76.     CPS again did not substantiate the allegation.

77.     C.S. began demanding that her mother photograph injuries at home because teachers were doing so at school, despite no prior notice to T.T. that such photographs were being taken.

78.     T.T. reported concerns about Planta-Lewis to the school principal, who reassured T.T. that she had nothing to be concerned about and then failed to undertake a meaningful investigation.

79.     On October 28, 2020, T.T. notified the then-superintendent of ACS in writing that Planta-Lewis had repeatedly contacted CPS without first communicating with her, that C.S.'s behavior had changed dramatically after the school year began, that C.S. was coming home with unexplained injuries, and that school staff appeared to be photographing C.S.

80.     On October 31, 2020, C.S. came home with bruising on her upper thigh consistent with forceful gripping.

81.     T.T. made a report to CPS expressing concern that C.S. was being harmed at school.

82.     T.T. retained counsel, and communications were initiated with ACS's counsel regarding concerns about C.S.'s treatment, suspected abuse at school, repeated CPS reports, and inadequate special education services.

83.     T.T., individually and/or through counsel, communicated concerns to the superintendent, the Will Rogers Elementary School principal, and the District's special education administration.

84.     Upon information and belief, although ACS made changes to C.S.'s individualized education planning after months of meetings, ACS failed to conduct a meaningful investigation into Planta-Lewis's conduct or to implement appropriate safeguards.

85.     After the 2020–2021 school year ended, C.S.'s behavior improved.

86.     After C.S.'s language abilities developed further, she disclosed that Planta-Lewis "hurt" her during kindergarten.

87.     In June 2025, a former Will Rogers paraprofessional informed T.T. that Planta-Lewis frequently contacted CPS regarding parents while the harm to students was occurring within the classroom and was being inflicted by Planta-Lewis herself.  That is shocking.

- **PLANTA-LEWIS'S CONTINUED ABUSE WHICH CULMINATED IN THE ABUSE OF THE PLAINTIFFS J.M. AND J.H. AND HER DISMISSAL, CRIMINAL CHARGES, AND REVOCATION**

88.     Planta-Lewis continued her physically and mentally abusive behavior after the 2020-2021 school year.

89.     Other teachers and paraprofessionals witnessed Planta-Lewis violently jerk special needs students around by the arm and yell at students in the hallway and in the classroom.

90.     Upon information and belief, Planta-Lewis's classroom had high turnover of paraprofessionals every year due to the toxic and abusive environment she created.

91.     The special education director at the District even warned one paraprofessional before the start of the school year that Planta-Lewis was "difficult" to work with.

92.    Parents, teachers, and paraprofessionals noticed that Planta-Lewis's students became visibly upset and fearful whenever she was around.

93.    In Fall 2022, a paraprofessional witnessed Planta-Lewis drinking alcohol at work and found empty bottles in the bathroom.

94.    The paraprofessional also witnessed Planta-Lewis physically abuse children by pulling their hair, pushing her foot into their backs to keep them from squirming during nap time, and jerking and dragging children by the arm.

95.    She also witnessed Planta-Lewis mentally abuse children by screaming at them and calling them names such as "bitch" and "brat."

96.    That semester, the paraprofessional reported Planta-Lewis's drinking and abusive behavior to the school principal and superintendent and even showed them photos of bottles found in the bathroom.

97.    Neither the principal nor the superintendent initiated an investigation of Planta-Lewis or implemented supervision of her.

98.    Planta-Lewis continued to mentally and physically abuse her students.

99.    Planta-Lewis often forcefully dragged J.M. down the hallway by his arm whenever the left side of his body gave out due to his cerebral palsy.

100.    During the 2023-2024 school year, Planta-Lewis left a bruise on J.M.'s arm from forcefully grabbing him, which a paraprofessional documented through photograph.

101.    Both J.M.'s mother and J.H.'s parents noticed that their sons reacted fearfully and cried whenever they approached Planta-Lewis's classroom.

102.    On April 10, 2024, it was reported to Superintendent Andy Davis that someone found a bottle of alcohol on the floor of the cafeteria at Will Rogers Elementary.

15

103.    Mr. Davis had the Information Technology (IT) department review video footage of the cafeteria. During the IT department's review of footage, the IT team noticed Planta-Lewis "handling a child in an inappropriate manner."

104.    Superintendent Davis then watched the video in question and saw Planta-Lewis yank a student up by the arm.

105.    Superintendent Davis and the IT team then retrieved videos as far back as the cameras would go—March 26, 2024—and saw other instances of Planta-Lewis treating students inappropriately.

106.    Superintendent Davis then contacted Corporal Dylan Davis, an officer with the Ardmore Police Department, who served as the School Resource Officer (SRO) for Ardmore City Schools in April 2024.

107.    Corporal Davis testified that upon reviewing security footage and surveillance cameras, he was able to identify the children who were being abused by special education teacher Betty Jo Planta-Lewis—Plaintiffs J.M. and J.H., who were both five years old at the time of the abuse.

108.    March 26, 2024, video footage showed Planta-Lewis pull J.H. around by his hoodie, take his jacket off and throw it on the ground, and then grab a handful of J.H.'s hair and yank it to the side to turn his head.

109.    March 28, 2024, video footage showed J.H grab a bottle of liquid off the table and take a drink, prompting Planta-Lewis to abruptly and forcefully take the bottle away, spilling its contents. Planta-Lewis then took a drink from the bottle and appeared to scold J.H. Minutes later, J.H. walked around the table and tried to put the lid on the bottle, and Planta-Lewis forcefully grabbed his right wrist and pulled him across the table. She then dragged him by the arm to get a cup of water and then poured some liquid from her bottle into his cup of water.

16

110. March 28, 2024, video footage showed Planta-Lewis walking toward J.H. as he was lying on a cot, which immediately caused J.H. to be fearful and put his leg up defensively. Planta-Lewis then grabbed J.H. by the left arm and forcefully jerked him to his feet and dragged him across the classroom.

111. April 5, 2024, video footage showed Planta-Lewis aggressively pull J.M. by the hand and arm to sit down next to her. J.M. repeatedly attempted to get away from Planta-Lewis and reached to the paraprofessional for help when she walked near him. A witness told the police that Planta-Lewis pressed J.M.'s thumb into the palm of his hand when she grabbed him.

112. April 5, 2024, video footage showed Planta-Lewis pull a crying J.M to the floor to do a drawing activity. She repeatedly pulled him by the arm when he tried to get away or stop doing the drawing activity.

113. The video footage, along with witness statements, demonstrated that Planta-Lewis often dug her fingers and thumbs into students when she grabbed and pulled them.

114. J.H. and J.M. are both nonverbal and thus could not alert anyone to Planta-Lewis's abuse of them.

115. On April 16, 2024, Corporal Dylan Davis signed a Probable Cause Affidavit and attested to the following observations after reviewing video footage:

- *I was able to determine Betty Planta-Lewis had been aggressive with and jerked two kids at Will Rogers Elementary School.*

- *On 03/26/2024, at 0819 hours, Betty grabbed the back of a child's hoodie at the neck, pulled and twisted the jacket.*

- *Betty started to scold the child and dropped the child's jacket on the ground.*

- *Betty rubbed the top of the head of the child and then got a handful of the child's hair and pulled the child's hair back.*

- *Betty turned the child's head to the left while having a handful of hair.*

17

o   *On 03/28/2024, at 1109 hours, a child is laying down on a cot on the floor.*

o   *The child's body language changes when Betty comes into the classroom.*
o   *Betty went over to the child and appears to scold the child. Betty grabs the child by the arm and jerks the child up to his feet.*

o   *On 03/28/2024 at 1426 hours, Betty grabbed a bottle of unknown liquid out of a child's hand. Betty then grabbed the child's arm and pushed the child away from her.*

o   *Betty grabbed the child when he went to put a lid back on her drink and jerked him across the table with his arm.*

o   *On 04/05/2024 at 1025 Betty grabbed a child that would not sit down next to her by the hand. The witness stated she pushed the child's thumb into the palm of the child and grabbed the child's arm.*

o   *On 04/05/2024 at 1309 hours, Betty grabbed both arms of a child and dragged him a step to turn him around.*

o   *Betty got on one knee and pulled the child to the ground to sit.*

116.    Felony charges were filed against Betty Jo Planta-Lewis for child abuse pursuant to 21 OKLA. STAT. § 843.5(A), for *"willfully and maliciously torturing"* J.H. and J.M. by *"inflicting extreme mental cruelty while working in her official capacity as an Ardmore City Schools teacher."*[13]

117.    On October 9, 2025, the OSDE revoked Betty Planta-Lewis's teaching license. She failed to appear at her revocation hearing.

118.    The Ardmore District Attorney's Office dropped the charges against Planta-Lewis on October 30, 2025, citing a health condition of Planta-Lewis.

---

[13] *State of Oklahoma v. Betty Jo Planta-Lewis,* Case No. CF-2024-196, (Carter Cnty. Dist. Ct.), *supra,* footnote 1, *herein.*

### C. THE DISTRICT'S FAILURE TO INTERVENE, REPORT, AND PROTECT

119. Under Oklahoma law, school personnel are mandatory reporters of suspected child abuse and neglect and are required to make prompt reports to appropriate authorities.

120. Despite repeated red flags, multiple staff reports, and direct observation opportunities, District personnel failed to take timely and reasonable steps to protect Plaintiffs and similarly situated students from abuse.

121. Upon information and belief, District administrators and supervisors failed to implement adequate safeguards in the special education setting, including appropriate training, oversight, documentation, reporting protocols, and supervision of Planta-Lewis.

122. The District's failures to investigate, report, supervise, and remediate were not isolated mistakes; they reflected a persistent and widespread custom, practice, and/or policy of deliberate indifference to the safety and constitutional rights of students with disabilities.

123. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered physical pain, emotional distress, psychological trauma, and developmental and educational regression.

124. Plaintiffs' parents report that Plaintiffs J.H. and J.M. now enjoy attending school rather than fearing it, underscoring the severity of the abuse and its impact while Plaintiffs J.H. and J.M. were assigned to Planta-Lewis's classroom.

## V. CAUSES OF ACTION

### COUNT I – 42 U.S.C. § 1983: Violation of the Fourteenth Amendment Right to Bodily Integrity (All Plaintiffs Against Defendant Ardmore City Schools)

125. Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

126. Under the Fifth and Fourteenth Amendments, Plaintiffs have the right to Due Process and Equal Protection of the Law.

127.    At all times relevant hereto, it was clearly established that Plaintiffs had fundamental rights to physical safety and to be free from the infliction of unnecessary pain.

128.    At all times relevant hereto, the School District was a state actor acting under the color of state law.

129.    Defendant denied Plaintiffs their rights to Due Process and Equal Protection of the Law by:

     a.    enacting inadequate policies, specifically regarding the reporting of suspected physical misconduct to law enforcement;

     b.    failing to enact and implement adequate policies concerning physical abuse of students by adults on campus;

     c.    failing to remove suspected child abusers from campus;

     d.    failing to remove students from classrooms or offices occupied by suspected child abusers;

     e.    failing to investigate Planta-Lewis properly before and after these referenced allegations;

     f.    failing to train and supervise Planta-Lewis properly;

     g.    failing to hire, train, and supervise teachers and/or administrators properly;

     h.    failing to report child abuse to law enforcement;

     i.    failing to report child abuse to parents of victims;

     j.    failing to investigate Planta-Lewis's misconduct;

     k.    continuing to employ Planta-Lewis and allow her unfettered, unsupervised interaction with students;

    l.    failing to adequately train and supervise the Ardmore City Schools' staff and employees; and

    m.    exhibiting deliberate indifference to the misconduct directed at Plaintiffs and others like them.

130.    Ardmore City Schools has an unconstitutional custom or policy of:

    a.    failing to properly investigate criminal misconduct against students;

    b.    failing to report criminal misconduct against students;

    c.    discounting the credibility of allegations;

    d.    failing to adequately train and supervise employees with regard to the investigation and reporting of abuse of students; and

    e.    failing to enact policies that require adherence to reporting requirements.

131.    Ardmore City Schools' custom or policy was demonstrated by the fact that Defendant received multiple allegations of misconduct regarding Planta-Lewis, yet failed to investigate those allegations or report them to law enforcement.

132.    Defendant's policy is attributable to municipal policymakers including, but not limited to, Superintendent Andy Davis, Principal Donna Blackmon, and the Ardmore Public Schools Board of Education.

133.    The inadequate policies and resulting failures to train allowed Planta-Lewis, as an Ardmore City Schools employee, to violate Plaintiffs' constitutional rights to equal protection and due process.

134.    Further, Defendant affirmatively acted to create, or increased the Plaintiffs' exposure and/or vulnerability to, the danger from Planta-Lewis's misconduct.

135.    Physical abuse of students at an elementary school and during school sponsored activities is a danger to those students.

136.    A school environment where children are feloniously abused by adults is a dangerous environment.

137.    Will Rogers Elementary was a dangerous environment for its students, including Plaintiffs.

138.    Plaintiffs were members of a limited and specifically definable group—namely, minor students with learning disabilities.

139.    Ardmore City Schools created the danger or increased Plaintiffs' vulnerability to the danger by effectively ignoring numerous allegations of misconduct by Planta-Lewis; not immediately removing Planta-Lewis from campus after receiving notice of her misconduct; continuing to allow Planta-Lewis unfettered and unsupervised access to students; not effectively investigating allegations of misconduct by Planta-Lewis; and/or not immediately reporting the allegations of misconduct to law enforcement and/or the students' parents.

140.    Ardmore City Schools' conduct put Plaintiffs and others like them at substantial risk of serious, immediate, and proximate harm. That risk included the risk of being abused while at Will Rogers Elementary. Indeed, Plaintiffs and other students were abused by Planta-Lewis after Ardmore City Schools had notice of Planta-Lewis's misconduct.

141.    The risk of danger was obvious or known to Ardmore City Schools, including due to disclosure of Planta-Lewis's misconduct to the Will Rogers Principal and Ardmore City Schools Superintendent during, but not limited to, the 2020-21, 2022-23, and 2023-24 school years.

142.    Ardmore City Schools' actions and inactions created an opportunity for Planta-Lewis to continue to abuse Plaintiffs and other students, as those actions stripped necessary aid from

Plaintiffs and others. Reporting Planta-Lewis's misconduct to law enforcement and/or the victims' parents could have enabled law enforcement, regulatory bodies, or parents to have sheltered Plaintiffs and other students from Planta-Lewis's abusive behavior, including by removing Planta-Lewis from Ardmore City Schools, removing Plaintiffs and/or other students from Ardmore City Schools, or otherwise preventing Planta-Lewis from further access to Ardmore students including Plaintiffs.

143.    Ardmore City Schools acted recklessly in conscious disregard of this risk.

144.    Ardmore City Schools acted with deliberate indifference.

145.    Ardmore City Schools' conduct shocks the conscience

146.    Ardmore City Schools' and its officials' failings as described above resulted in Plaintiffs and other students suffering severe emotional distress, psychological damage, significant pain and suffering, and/or personal humiliation.

147.    The School District's failures were not isolated or negligent missteps. Staff and administrators had actual and constructive notice of a pattern of abusive conduct in Planta-Lewis's classroom evidenced by recorded video, by first-hand observations of multiple employees, and by reports made to school and District administrators. Despite this notice, the School District failed to take timely and appropriate action to stop the abuse, thereby allowing it to persist and escalate.

148.    The School District also affirmatively created or increased the danger to Plaintiffs by allowing Planta-Lewis continued, unfettered access to nonverbal and profoundly disabled children despite known red flags, by maintaining an environment where subordinate staff were deterred from reporting, and by failing to monitor and intervene in the face of readily observable abuse.

149.    The School District's customs, practices, and failures to train and supervise were the moving force behind the constitutional violations and were closely related to the resulting injuries. As a direct and proximate result, Plaintiffs suffered the harms described above.

**COUNT II – Negligence (Plaintiffs Against Defendant Ardmore City Schools)**

150.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

151.    The School District owed Plaintiffs a duty to exercise ordinary care in hiring, training, supervising, and retaining employees; to maintain safe educational environments; to protect students from foreseeable harm; to enforce mandatory reporting; and to respond reasonably to allegations and evidence of abuse.

152.    The School District breached its duties by, among other failures:

a.    failing to properly supervise the Ardmore City Schools staff;

b.    failing to monitor its own surveillance cameras;

c.    failing to properly investigate reports of misconduct and abuse;

d.    failing to conduct appropriate assessments of students and employees;

e.    failing to report neglect, abuse, and misconduct as required by law;

f.    failing to have proper policies and procedures in place to prevent abuse inside Ardmore City Schools;

g.    failing to have proper controls and checks in place to prevent employees from abusing students;

h.    failing to take precautions to prevent Plaintiffs from suffering further injury;

i.    failing to adequately staff the Ardmore City Schools with sufficient and qualified personnel to provide the level of professionalism needed by Plaintiffs;

j.    failing to hire sufficient and qualified personnel to supervise and monitor the staff at Ardmore City Schools;

24

k.  failing to properly train Ardmore City Schools employees to identify, report, and prevent abuse of disabled and nonverbal students;

l.  failing to do a proper and thorough background check before hiring employees; and

m.  retaining problematic employees.

153.  The School District's negligence directly and proximately caused Plaintiffs' injuries and damages. Plaintiffs seek all recoverable damages permitted by law. To the extent applicable, Plaintiffs seek recovery under the GTCA and subject to its limitations.

154.  Ardmore City Schools was properly served with Notice of Tort Claims of J.H. and J.M. pursuant to the Oklahoma Governmental Tort Claims Act on March 24, 2025. Under the GTCA, the School District had 90 days thereafter (until June 22, 2025) to accept or reject Plaintiffs' claim. The School District did not respond to Plaintiffs' Notice of Tort Claims. Plaintiffs' claim has thus been deemed denied for purposes of the GTCA, and they are within their 180-day window from the date of such denial in which to now bring their state-law claims against the School District.

**COUNT III – Gross Negligence (Plaintiffs Against Defendant Ardmore City Schools)**

155.  Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

156.  The School District's conduct, in light of the obvious and documented risks to Plaintiffs and the School District's awareness of ongoing abuse in a surveilled classroom serving nonverbal, profoundly disabled children, constituted gross negligence reflecting reckless disregard for Plaintiffs' safety and rights.

157.  The School District's sustained failure to act in the face of repeated, visible abuse demonstrates a conscious indifference to the substantial likelihood of serious harm to Plaintiffs.

25

158.    As a direct and proximate result, Plaintiffs suffered the injuries and damages described herein. Plaintiffs seek all recoverable damages permitted by Oklahoma law.

**COUNT IV – Assault and Battery (Plaintiffs Against Defendant Planta-Lewis)**

159.    Plaintiffs incorporate the foregoing paragraphs as if fully set forth herein.

160.    Planta-Lewis intentionally placed Plaintiffs in apprehension of immediate harmful and offensive contact and intentionally made harmful and offensive contact with them without consent by slapping, striking, grabbing, choking, dragging, pinning, shoving, forcing items into their mouths, and otherwise unlawfully touching them.

161.    Planta-Lewis's conduct constitutes assault and battery under Oklahoma law. As a direct and proximate result, Plaintiffs suffered physical pain and injury, emotional distress, humiliation, and other damages.

162.    Plaintiffs seek compensatory and, to the extent permitted by law, punitive damages against Planta-Lewis for her intentional, malicious, and recklessly indifferent conduct.

**COUNT V – Intentional Infliction of Emotional Distress (All Plaintiffs Against Defendant Planta-Lewis)**

163.    The previous factual statements and allegations are incorporated by reference.

164.    The physical and mental abuse that Planta-Lewis inflicted on Plaintiffs was done maliciously and sadistically.

165.    Planta-Lewis's actions were extreme and outrageous and beyond the bounds of decency.

166.    Planta-Lewis's actions were atrocious and utterly intolerable in a civilized society.

167.    As a direct result of Planta-Lewis's actions, Plaintiffs were severely traumatized, beyond which a reasonable young boy would be expected to endure.

168.    Planta-Lewis intentionally and/or recklessly caused Plaintiffs emotional distress.

169. Planta-Lewis's actions were intentional and/or reckless, with disregard for the rights of others, including the rights of Plaintiffs.

## VI. DAMAGES

170. As a direct and proximate result of Defendants' conduct, Plaintiffs suffered and continue to suffer:

    a. physical pain and injury;

    b. severe emotional distress and trauma;

    c. mental anguish;

    d. humiliation;

    e. loss of dignity and bodily autonomy;

    f. behavioral and developmental regression;

    g. interference with educational access and progress;

    h. and loss of enjoyment of life.

171. Plaintiffs also seek special damages, including the costs of counseling, therapy, and related care reasonably necessary to treat the harms described

## VII. JURY DEMAND

172. Plaintiffs demand a trial by jury on all issues so triable.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants Ardmore City Schools and Betty Jo Planta-Lewis, and award the following relief:

a. Compensatory damages against all Defendants, jointly and severally where permitted by law, in an amount to be proven at trial, for physical pain, emotional distress, psychological

trauma, mental anguish, loss of dignity and bodily autonomy, humiliation, interference with educational access, and loss of enjoyment of life;

b. Special damages for past and future costs of therapy, counseling, and related medical and supportive services reasonably necessary to address Plaintiffs' injuries;

c. Punitive damages against Defendant Planta-Lewis to the extent permitted by law;

d. Reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and other applicable law;

e. Pre- and post-judgment interest as allowed by law; and

f. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

*/s/ Ross Leonoudakis*
Bradley E. Beckworth, OBA No. 19982
Ross Leonoudakis, OBA No. 34570
Nathan B. Hall, OBA No. 32790
Drew Pate, OBA No. 34600
**NIX PATTERSON, LLP**
8701 Bee Cave Road
Building 1, Suite 500
Austin, TX 78746
Telephone: (512) 328-5333
Facsimile: (512) 328-5335
*Bbeckworth@nixlaw.com*
*Rossl@nixlaw.com*
*Nhall@nixlaw.com*
*Dpate@nixlaw.com*

**JURY TRIAL DEMANDED**                -and-

**ATTORNEYS' LIEN CLAIMED**        */s/ Cameron Spradling*
Cameron Spradling, OBA No. 8509
Katelyn Elrod, OBA No. 35596
**CAMERON SPRADLING, PLLC**
500 North Walker Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 605-0610

Facsimile: (405) 605-0615
*cameron@cameronspradling.com*
*katelyn@cameronspradling.com*

**Attorneys for Plaintiffs**